151 Wis.2d 566 (1989)
445 N.W.2d 673
IN RE the PATERNITY OF J.L.K.: J.L.K., Petitioner-Respondent,
v.
J.J., Respondent-Appellant.
No. 88-1741.
Court of Appeals of Wisconsin.
Submitted on briefs April 26, 1989.
Decided July 5, 1989.
*568 On behalf of respondent-appellant there were briefs filed by Jerry H. Gonzalez of Milwaukee.
*569 On behalf of petitioner-respondent, there was a brief by Harvey G. Samson of Bollenbeck, Block, Seymour, Rowland & Samson, S.C. of Appleton.
An amicus curiae brief was filed on behalf of Department of Health and Social Services of the State of Wisconsin, Office of Child Support by Donald J. Hanaway, attorney general, and Donald P. Johns, assistant attorney general, of the Wisconsin Department of Justice, and of counsel Sherwood K. Zink of the Wisconsin Office of Child Support, Madison.
Before Cane, P.J., LaRocque and Myse, JJ.
CANE, P.J.
J.J. appeals a judgment determining that he is the father of J.L.K. He contends that the trial court abused its discretion when it admitted the results of DNA testing. We conclude that the trial court properly admitted DNA fingerprinting evidence in accordance with sec. 767.48, Stats. (1985-86). We reject J.J.'s remaining arguments that the trial court erroneously excluded evidence as to the probable paternity of a witness excluded by blood tests, permitted objections to videotaped testimony, and denied his request for continuance. Consequently, we affirm the judgment.
The mother identified two men as potential fathers, and blood tests excluded one. J.J., not excluded, acknowledged that he and the mother engaged in sexual intercourse but that it occurred three weeks before the conceptive time period. The mother testified that she and J.J. had relations during the conceptive time period.
After the family court commissioner issued an order for paternity blood tests, J.J. moved for a continuance to request additional testing, including a DNA probe. A DNA probe, also known as "DNA fingerprinting," is a term given to a genetic and molecular biological process that is based on the fact that each individual has an *570 entirely unique genetic "signature," except in the case of identical twins, derived from the overall configuration of DNA (deoxyribonucleic acid) found in every cell containing a nucleus. In molecular biology, the techniques used in this process are known as "Restriction Fragment Length Polymorphism," abbreviated as "RFLP." Under RFLP technology, DNA can be extracted, fragmented and analyzed at the molecular level, then compared with DNA from a known biological specimen for identification purposes. For further discussion of this process, see People v. Wesley, 533 N.Y.S.2d 643 (1988), and From here to paternity: Using blood analysis to determine parentage, July 1988 Wis. B. Bull. 24.
The trial court allowed the additional time and ordered the requested testing. J.J. moved to exclude the results of the DNA test on the grounds of the test's validity and reliability.[1] The trial court denied the motion, stating:
THE COURT: Well, the results are filed in accordance with Statute [sec. 767.48]. The request is a test requested by the defendantor the alleged father, who is now obviously unhappy with the results and tried to exclude the test that he demanded be taken. The motion is denied.
At trial, G.L. Ryals, Ph.D., a clinical laboratory director for a genetic testing laboratory, testified that the DNA probe is a brand new technology, and that it *571 failed to exclude J.J. as the father. The test also concluded that based on RFLP analysis (DNA probes), the probability of paternity is 99.98000% as compared to an untested random man of Northern American Caucasian population.
Ryals testified that in addition to his educational background, he has worked in this field for seven years and has reviewed some 70,000 paternity cases. Ryals also testified that he is personally familiar with the work done at Life Codes Corporation laboratory, which performed the DNA probe, and relies upon its processes as being accurate.
[1-4]
J.J. argues that the trial court improperly admitted the test results without first determining their reliability. We disagree. Evidentiary issues are addressed to trial court discretion. State v. Pharr, 115 Wis.2d 334, 342, 340 N.W.2d 498, 501 (1983). We review the record to determine whether the trial court made a reasoned decision based upon proper considerations of fact and law. Id. at 343, 340 N.W.2d at 502. Underlying a discretionary decision there may be factual or legal questions. We defer to the trial court on factual issues, see sec. 805.17(2), Stats., but review legal issues de novo. Lambert v. Wrensch, 135 Wis.2d 105, 115, 399 N.W.2d 369, 374 (1987). Here, the evidentiary issues require the application of a particular set of facts to a statute, thus presenting an issue of law. Bucyrus-Erie Co. v. DILHR, 90 Wis.2d 408, 417, 280 N.W.2d 142, 146-47 (1979).
The blood test results are admissible as a consequence of statutory directive. Section 767.48[2] provides *572 for the admissibility of blood test results and the statistical probabilities of the alleged father's paternity:
(1) ... The tests shall be performed by an expert qualified as an examiner of genetic markers present on blood cells and components, appointed by the court. A report completed and certified by the court-appointed expert stating blood test results and the statistical probability of the alleged father's paternity based upon the blood tests is admissible as evidence without expert testimony and may be entered into the record at the trial or pretrial hearing if, at least 10 days before the trial or pretrial hearing, the party offering the report files it with the court and notifies all other parties of that filing.
(2) The court, upon request by a party, shall order that independent tests be performed by other experts qualified as examiners of genetic markers present on blood cells and components. Additional tests performed by other experts of the same qualifications may be ordered by the court at the request of any party.
There is no dispute that the DNA probe was a blood test performed by an expert qualified as an examiner of genetic markers on blood cells and components. Also, certified copies of the blood test results were filed with the court more than ten days prior to trial.
[5, 6]
The appellate courts have consistently recognized a prima facie presumption of accuracy of tests expressly authorized by statute. T.A.T. v. R.E.B., 144 Wis.2d 638, 652, 425 N.W.2d 404, 410 (1988). Because the legislature has provided that the test results are admissible in paternity proceedings, they are presumed reliable. Id. Thus, any objections as to the test's validity or reliability are matters of weight and credibility to be determined by the *573 trier of fact who ultimately decides the weight to be accorded the test results. Id.
[7]
Because the test results were completed, certified, and filed according to the statutory requirements, the DNA test results were admissible under sec. 767.48's broad language governing blood test admissibility.
[8]
We also reject J.J.'s argument that the trial court denied him due process by failing to articulate a proper basis for denial of his motion to exclude the test results. J.J. contends that his request for the DNA blood test did not waive his objections to its admissibility. The trial court, however, did not base its decision to admit the DNA test results on a theory of waiver, but rather on sec. 767.48. J.J. fails to demonstrate, and we do not perceive, a denial of due process. J.J.'s objections raised in his motion as to the validity and reliability of the tests in general, as well as to the techniques employed in this particular test, are challenges that can be raised through cross-examination and other impeachment evidence, such as expert witnesses and treatises.
[9]
We are also unpersuaded by J.J.'s next argument, that the court erroneously precluded testimony concerning blood test results that excluded another male witness. Section 767.48(4), Stats. (1985-86), provides that whenever blood test results exclude any male witness from possible paternity, "the tests shall be conclusive evidence of nonpaternity of the male witness." Here, there is no dispute that the tests excluded the other male witness. The trial court properly applied the statute and excluded the evidence. We recognize problems inherent in the presumptions accorded blood test reports, but, in *574 the absence of a constitutional infirmity,[3] this is a matter to be addressed to the legislature. See T.A.T., 144 Wis.2d at 651-52, 425 N.W.2d at 410.
Next, J.J. argues that the trial court erroneously permitted objections made for the first time at the trial to videotaped testimony. J.J. relies on sec. 885.44(11) and (14), Stats., which provide a procedure for objections to videotaped testimony, to support his claim that the objections were waived.
However, sec. 804.07(3)(c), Stats., provides that objections to the relevancy or materiality of testimony are not waived by failing to make them before or during the taking of testimony "unless the ground of the objection is one which might have been obviated or removed if presented at that time." An objection, therefore, is required only if the deficiency may be cured by supplemental questioning. Strelecki v. Firemans Ins. Co., 88 Wis.2d 464, 476, 276 N.W.2d 794, 799 (1979). Here, the objectionable testimony concerned blood tests excluding the other male witness. The other male's nonpaternity had been conclusively determined, sec. 767.48(4), and evidence concerning the accuracy of his tests did not relate to an issue in this case. Because the deficiency could not be cured by supplemental questioning, the objections were not waived pursuant to sec. 804.07(3)(c).
[10, 11]
Also, the trial court has considerable discretion in the conduct of a trial, Wengerd v. Rinehart, 114 Wis.2d 575, 580, 338 N.W.2d 861, 865 (Ct. App. 1983), and its rulings will not be disturbed unless a party's rights have been prejudiced. Here, the legislature has preempted the litigation of paternity of a male whose blood tests have excluded him as the biological father. Therefore, the trial *575 court was within its rights to prohibit testimony concerning the excluded male's blood tests, regardless of the form and timing of the objection.
Finally, we conclude that it was within the trial court's discretion to deny J.J.'s motion for a continuance. J.J. contends that he required a continuance because he retained a new lawyer who needed additional preparation time, his expert witness was unavailable on the day of trial, and additional blood test results were not yet received.
[12]
The trial court explained its denial of the continuance. The case was nearly one year old, it had been continued once previously, the parties were aware of the trial date prior to the request for additional blood tests and substitution of attorneys, and the expert could and did testify by means of videotape. Because the trial court articulated a reasonable basis for its discretionary decision, we do not overturn it on appeal. See Robertson-Ryan & Assocs. v. Pohlhammer, 112 Wis.2d 583, 587-88, 334 N.W.2d 246, 249 (1983).
By the Court.Judgment affirmed.
NOTES
[1] The motion contended that to establish foundation, the petitioner must demonstrate, among other things: 1) the accuracy of the underlying genetic principles; 2) the accuracy and reliability of the methods and procedures; 3) the reliability of computer programming, equipment, and data input procedures for computer generated evidence; 4) the validity and reliability of the statistical analysis, including the design of the population sample and the collection and interpretation of data.
[2] We refer to sec. 767.48, Stats. (1985-86), but conclude that the changes made in sec. 767.48, Stats. (1987-88), do not affect our analysis here.
[3] No constitutional challenges were raised concerning this statute.