MÓNICA E. RIVERA PÉREZ, por sí y en representación de su hijo menor F.R., demandantes y peticionarios, *v.* WANDA LEÓN y VÍCTOR LEÓN RALLAT, demandados y recurridos.

*Número:* CE-92-473          *Resuelto:* 30 de junio de 1995

*Ángel A. Rivera Montalvo*, abogado de los peticionarios; *William Pagán Rodríguez*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

En un pleito de filiación instado contra los hijos de un matrimonio anterior del alegado padre (fallecido éste), la

parte demandante solicitó al tribunal de instancia que le ordenara a éstos someterse a los exámenes genéticos correspondientes. Los hijos del alegado padre fueron demandados como herederos de éste. El tribunal denegó la solicitud y la parte demandante acudió ante nos.

Examinados los escritos, la literatura pertinente a las pruebas de paternidad y la jurisprudencia aplicable, revocamos la resolución recurrida. Resolvemos que hasta que la Asamblea Legislativa actúe sobre este asunto procede bajo la Regla 82(C) de Evidencia, 32 L.P.R.A. Ap. IV, que se ordene a los hijos del alegado padre fallecido someterse a las pruebas genéticas. Se devuelve el caso para la continuación de los procedimientos.

## I

La Sra. Mónica E. Rivera Pérez, por sí y en representación de su hijo menor, F.R., presentó ante el Tribunal Superior, Sala de Aibonito, una demanda de filiación, pensión alimentaria y división de comunidad de bienes. En síntesis, alegó que ella y el Sr. Víctor León habían convivido como matrimonio y que en 1990 se mudaron de Nueva York a Coamo. Alegó además que habían adquirido una casa en Coamo en la cual convivían y que ella había quedado embarazada del señor León. Conforme se alegó en la demanda, estando la señora Rivera Pérez en su sexto mes de embarazo, el señor León falleció trágicamente; por lo que cuando nació el menor, éste fue inscrito en el Registro Demográfico sin incluir el nombre del padre. Se alegó, a su vez, en la demanda que los demandados habían sido declarados como únicos y universales herederos del Sr. Víctor León mediante resolución judicial.

La parte demandante solicita a los demandados, hijos y herederos del señor León, que reconozcan al menor como su hermano con todos sus derechos hereditarios y que éste

sea inscrito como tal y a su vez que se le conceda una pensión alimentaria.([1])

Luego de contestada la demanda, la parte demandante presentó una moción en la que solicitó que se ordenara a los demandados a someterse a un estudio científico para determinar la relación genética entre la sangre del menor y la de sus presuntos hermanos con el propósito de establecer que el padre de los demandados es también el padre del menor. A esta moción se opuso uno de los codemandados señalando que el referido examen atentaba contra su derecho a la intimidad y que no estaba resuelto en nuestra jurisdicción *si el tribunal podía ordenar a los hermanos a someterse a este examen.* El tribunal de instancia declaró no ha lugar la moción para solicitar un estudio de paternidad.

Inconforme, acude ante nos la parte demandante señalando que erró el tribunal al declarar sin lugar la referida moción.

Mediante Resolución de 25 de septiembre de 1992 dictamos una orden de mostrar causa a la parte recurrida por la cual no deba revocarse la resolución recurrida y permitir que los demandados, hijos del Sr. Víctor León, sean sometidos a la prueba solicitada.([2]) Estudiados los escritos de las partes y la jurisprudencia aplicable, concluimos que procede que resolvamos según lo intimado en nuestra orden. Veamos.

## II

En nuestra jurisdicción hemos reconocido la utilidad del adelanto tecnológico y científico de las investiga-

---

([1]) Cabe señalar que el Art. 126 del Código Civil, 31 L.P.R.A. sec. 505, autoriza la acción de filiación en casos de muerte del padre o madre y dispone los términos para ejercitar ésta. Véase *Calo Morales v. Cartagena Calo*, 129 D.P.R. 102 (1991).

([2]) Resolución dictada por la Sala Especial de Verano integrada por su Presidente el Juez Asociado Señor Negrón García y los Jueces Asociados Señores Alonso Alonso y Fuster Berlingeri.

ciones en el área de las pruebas para la determinación de paternidad en el contexto del proceso judicial. En *Ortiz v. Peña*, 108 D.P.R. 458 (1979), refrendamos la confiabilidad de las pruebas serológicas para la exclusión de la paternidad y autorizamos expresamente a los tribunales para que discrecionalmente ordenaran dichas pruebas en acciones en las que la paternidad fuese un hecho pertinente. Ello hasta tanto la Asamblea Legislativa actuara.

Posteriormente, la Asamblea Legislativa enmendó la Regla 82 de Evidencia, 32 L.P.R.A. Ap. IV, incorporando lo resuelto en *Ortiz v. Peña*, supra, al disponer lo siguiente, en lo pertinente:

Regla 82. Experimentos y pruebas científicas

(C) En cualquier acción en la que la paternidad sea un hecho pertinente, el tribunal podrá a iniciativa propia, o deberá, a moción de parte oportunamente presentada, ordenar a la madre, hijo o hija y al presunto padre o alegado padre biológico a someterse a exámenes genéticos. Todos los gastos relacionados con la prueba solicitada serán sufragados por el peticionario en aquellos casos en que la misma produzca un resultado negativo. En el caso que el resultado del examen sea positivo, los gastos serán cubiertos por el peticionado. Si la parte obligada a pagar el costo de la prueba es beneficiaria de ayuda económica del Programa de Asistencia Pública del Departamento de Servicios Sociales bajo la Categoría de Ayuda a Familias con Niños Necesitados, o del Programa de Ayuda a Familias Médico Indigentes (Medicaid), su costo será cargado a la parte del Fondo General del Gobierno del Estado Libre Asociado de Puerto Rico asignada al Programa de Sustento de Menores del Departamento de Servicios Sociales.

Se presumirá controvertiblemente la paternidad en aquellos casos en que un padre putativo se negare a someterse al examen genético ordenado por el tribunal. Los exámenes deberán ser realizados por peritos debidamente calificados y nombrados por el tribunal. Antes de admitirse dichos exámenes en evidencia, el tribunal determinará y hará constar en los autos que los exámenes se han llevado a cabo siguiendo las más estrictas normas exigidas para esta clase de análisis.

(D) Si el tribunal determina que de los hallazgos y conclusiones de los peritos, según revelado por la evidencia basada en los exámenes, el alegado padre no es el padre del niño, el hecho de

la paternidad se resolverá de acuerdo a las mismas. Si los peritos no se ponen de acuerdo en sus hallazgos y conclusiones, el hecho de la paternidad se resolverá de acuerdo a toda la evidencia presentada. Si los peritos concluyen que los exámenes de sangre demuestran la posibilidad de la paternidad del alegado padre, será discrecional del tribunal la admisión de esta evidencia, dependiendo de si el tipo de sangre es uno de los que ocurren con poca o mucha frecuencia.

■ En *Pueblo v. Maisonave Rodríguez*, 129 D.P.R. 49 (1991), aclaramos que la prueba HLA, comúnmente utilizada en casos en los que la paternidad está en controversia, *sólo podía arrojar una probabilidad relativa de paternidad*. Por ello, resolvimos que el tribunal "puede utilizar esta probabilidad *como un elemento más* para llegar a su propia conclusión, luego de aquilatada toda la prueba, sobre si el presunto padre no excluido por la prueba H.L.A. es o no el padre biológico del menor". (Énfasis suplido.)

Al presente, el desarrollo científico y tecnológico alcanzado en los estudios del ADN (DNA por sus siglas en inglés) provee uno de los medios más utilizados para la determinación de relaciones biológicas en los pleitos de paternidad. Véanse: A. Carr Sozer y otro, *DNA and its Use in Paternity Determination*, 7 (Núm. 1) Forum 13 (1991); ASHG, *Individual Identification by DNA Analysis: Points to Consider*, Am. J. Hum. Genet., 46: 631–634, 1990; National Research Council, *DNA Tecnology in Forensic Science*, National Academy Press, pág. 142;(³) E.D. Shapiro y otro, *The DNA Paternity Test: Legislating the Future Paternity Action*, Ed. C.H. Wecht, Legal Medicine 1993, Butterworth Legal Publ. 1994, pág. 233.

El ADN o ácido desoxirribonucleico es el código genético de cada persona. Los cromosomas humanos son los empa-

---

(³) Algunos estados tales como Arkansas, Connecticut, Michigan, Montana y Nuevo México mediante legislación admiten en evidencia pruebas de ADN (DNA por sus siglas en inglés) para asistir en la resolución de pleitos civiles sobre paternidad. Otros estados tales como Louisiana, Maryland, Minnesota, Virginia y Washington han legislado la admisibilidad de evidencia ADN en casos criminales. Refiérase a *Use of DNA Information in the Legal System* en National Research Council, *DNA Technology in Forensic Science*, National Academy Press, pág. 142.

ques que acomodan y contienen el ADN en cada individuo. El contenido genético del ADN es la expresión hereditaria recibida a partes iguales de ambos padres. R. Rivera Meléndez, A. Rodríguez Trinidad, *Perfil DNA: Consideraciones Técnico-Legales*, 7 (Núm. 1) Forum 3 (1991). Por ello es que la composición del material genético o ADN puede identificarse en el ADN de los padres ya que es el resultado de las aportaciones de ambos.

Las pruebas que tradicionalmente se han utilizado en pleitos de filiación (tales como ABO, MNSs, Rh y HLA) interpretan marcadores genéticos químicos que son expresiones del material genético. Estos marcadores son productos celulares, principalmente proteínas que están presentes en las membranas de las células rojas y blancas de la sangre. En contraste con estas pruebas tradicionales, las del ADN estudian directamente el propio material genético.[4] V.A. Hammond y otro, *Scientific and Legal Aspects of DNA Typing,* en S.B. Schatkin, *Disputed Paternity Proceedings*, 4ta ed., Ed. Mathew-Bender, 1994, Vol. 1, Cap. 11B, Sec. 11B.01. Cada individuo, excepto en el caso de gemelos idénticos, posee un código genético único conocido como ADN, el cual se encuentra en cada cromosoma de cada célula del cuerpo humano. La sangre, el semen, la piel y el cabello permiten la identificación de la persona a través de su ADN. Comentario, *DNA Fingerprinting: A Guide to Admisibility and Use*, 57 Miss. C. L. Rev. 547 (1992).

El Dr. Ángel Rodríguez Trinidad[5] explica que la prueba del ADN utiliza la parte no codificada de éste que "se caracteriza por presentar secuencias de nucleotidos (series de escalones) bien repetitivas pero con pequeñas variaciones de una persona a otra (*Variable Number of Tandem Repetition* o VNTR). Esta variación es precisamente el fun-

---

[4] En la literatura la prueba ADN también se denomina: *DNA fingerprinting; DNA profiling; DNA printing*, y *DNA typing.*

[5] El doctor Rodríguez Trinidad es el Director del Laboratorio de Histocompatibilidad del Recinto de Ciencias Médicas, Universidad de Puerto Rico.

damento teórico que aplicamos en la Prueba ADN en filiación. La prueba ADN ayudará a determinar si el padre putativo pudo haber aportado los 'VNTR' presentes en el menor". A. Rodríguez Trinidad, *Prueba DNA en Paternidad*, (separata), U.P.R., Recinto de Ciencias Médicas, Escuela de Medicina, Depto. de Patología, Laboratorio de Histocompatibilidad, 12 de octubre de 1993. En esta publicación se resume en qué consiste la referida prueba.[6]

■    La prueba ADN, al igual que otras pruebas que se utilizan para fines de filiación, es una prueba de exclusión. El por ciento de exclusión que se logra con la prueba del ADN es un (99%) en comparación con la de HLA que es de un (95%).[7] Sin embargo, se informa en la literatura que la probabilidad de exclusión de la paternidad puede ser aumentada cuando se utiliza la prueba ADN en combinación con otras pruebas, tales como la de HLA. Shapiro y otro, *op. cit.*, pág. 233.

■    *La prueba del ADN a menudo permite establecer relaciones biológicas que no son de paternidad. Así, por*

---

[6] "La prueba DNA se basa en la determinación del tamaño o peso molecular de diferentes segmentos ('VNTR') del DNA no codificado estudiado. El primer paso será separar las dos cadenas del DNA (o las barras paralelas de la escalera) heredadas una de la madre y la otra del padre. Cada cadena tendrá su correspondiente secuencia de bases (o cada barra paralela de la escalera se quedará con la mitad de cada escalón). Siguiendo el ejemplo, estudiamos con esta prueba, el tamaño de los pedazos de la escalera después de cortarla selectivamente por ciertos lugares. Para ello se utilizan unas sustancias conocidas como 'enzimas de restricción'. Estas sustancias son capaces de reconocer ciertas secuencias de bases o escalones; y cada vez que encuentran una secuencia de nucleotidos determinada, cortarán la cadena de DNA. El resultado de estos cortes traerá consigo la producción de varios trozos de DNA (VNTR), que variarán en tamaño y en sus pesos moleculares. Es decir, tendremos dos trozos de las barras paralelas, con diferentes número de escalones cada uno. La etapa final consistirá en aplicar unas sondas o 'probes' (trozos de DNA cuya secuencia de bases es conocida previamente) que se parearán específicamente con los pedazos de DNA, en función de la complementaridad de sus bases con las de estos; A-T ó C-G." A. Rodríguez Trinidad, *Prueba DNA en Paternidad* (separata), U.P.R., Recinto de Ciencias Médicas, Escuela de Medicina, Depto. de Patología, Laboratorio de Histocompatibilidad, 12 de octubre de 1993, pág. 3. Véanse, además: A. Carr Sozer y otro, *DNA and its Use in Paternity Determination*, 7 (Núm. 1) Forum 13 (1991); R. Rivera Meléndez y A. Rodríguez Trinidad, Perfil *DNA: Consideraciones Técnico-Legales*, 7 (Núm. 1) Forum 3 (1991).

[7] Refiérase a Rodríguez Trinidad, *supra.*

ejemplo, podría determinarse la probabilidad de que un alegado hijo de un presunto padre fallecido sea hermano o medio hermano de otro hijo de éste. Hammond y otro, *op. cit.*, Sec. 11B.03. A esos efectos en la citada obra *Disputed Paternity Proceedings* se explica que al realizar la prueba si se incluye a las respectivas madres (de los hijos y del alegado hijo de padre fallecido), esto le añade precisión a la prueba ya que permite la eliminación de las bandas maternas heredadas por cada hijo y sólo se comparan aquellas heredadas del padre.

■ Nuestra revisión de la literatura en esta área nos muestra que la prueba del ADN cada día tiene una mayor aceptación en los procesos judiciales de filiación.[8] Reconocemos, sin embargo, que en los procesos criminales la utilización de los resultados de la prueba del ADN plantea

---

[8] Por ejemplo, hemos encontrado casos en los que se ha llegado a la drástica medida de ordenar la exhumación del cadáver del presunto padre para poder realizarle la referida prueba. *Alexander v. Alexander*, 537 N.E.2d 1310 (1988), y *Batchelor v. Boyd*, 423 S.E.2d 810 (1992). En otro caso, a petición del alegado padre, se ordenó la prueba ADN por discrepancias en los resultados de las pruebas de sangre: *In S.L.B. v. K.A.*, 579 N.Y.S.2d 964 (1992). En *Tipps v. Metropolitan Life Ins. Co.*, 768 F. Supp. 577 (S.D. Tex. 1991), la prueba del ADN *realizada a dos (2) hermanos demostró que estos eran hermanos maternos y excluyó al alegado padre fallecido* de ser el padre de la menor. La Corte de Distrito concluyó que la prueba del ADN junto a otra evidencia en el caso constituía evidencia clara y convincente de que el alegado padre no era el padre biológico. En *Veeney on Behalf of Strother v. Sullivan*, 973 F.2d 326 (4to Cir. 1992), en apelación de una sentencia que confirmaba la desestimación de una reclamación de seguro social, el Tribunal de Apelaciones para el Cuarto Circuito resolvió que las pruebas de sangre realizada a unos hermanos eran admisibles en evidencia. Concluyó dicho foro apelativo que éstas junto a la otra evidencia en el caso constituyeron prueba clara y convincente para establecer la paternidad del presunto padre fallecido como cuestión de derecho. En este caso se reclamaban los beneficios del seguro social para un menor que alegadamente era hijo del beneficiario fallecido. Las pruebas se realizaron a dos (2) hermanos y a un presunto tío (hermano del presunto padre fallecido). Los resultados de las pruebas mostraron que los hermanos probablemente tenían el mismo padre biológico y que el presunto tío tenía una alta probabilidad (783, 229 a 1) de ser el tío biológico y que no era el padre de los menores. Se concluyó, además, que el padre de los niños, muy probablemente, era un miembro de la familia del tío. Véanse, además: *Ex parte Perry*, 586 So. 2d 242 (1991); *People v. Lipscomb*, 574 N.E.2d 1345 (1991); *Smith v. Deppish*, 807 P.2d 144 (Kan. 1991); *People v. Adams*, 489 N.W.2d 192 (1992); *Mastromatteo v. Harkins*, 615 A.2d 390 (1992); *State v. Wimberly*, 467 N.W.2d 499 (1991); *Department of Human Services v. Jones*, 627 So. 2d 810 (1993); *J.E.B. v. State*, 606 So. 2d 156 (1992); *M.A. v. Estate of A.C.*, 643 A.2d 1047 (1993); *Matter of Adoption of Baby Girl S*, 532 N.Y.S.2d 634 (1988); *In Re Paternity of J.L.K.*, 445 N.W.2d 673 (1989), entre otros.

otros problemas que por ser inaplicables al presente caso, no es necesario discutir.[9]

## III

En atención a la jurisprudencia aplicable y considerando los adelantos en el área de las pruebas genéticas, concluimos que erró el tribunal de instancia al denegar la solicitud para la realización de estas pruebas. En primer lugar, la enmienda a la Regla 82 de Evidencia, *supra*, introducida por la Ley Núm. 10 de 16 de julio de 1990 tuvo como propósito el "hacer mandatorio para el tribunal requerir *a todas las partes* en la controversia que se sometan a ese tipo de examen, de mediar moción de parte" a esos fines. (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 10, *supra*, Leyes de Puerto Rico, pág. 68. En la citada Exposición de Motivos se considera esta enmienda como una que propende al logro de la política pública del Estado Libre Asociado de Puerto Rico de "lograr que la paternidad sea establecida en el mayor número posible de casos de menores que han nacido fuera del matrimonio". Exposición de Motivos de la Ley Núm. 10, *supra*. Esto es parte del alto interés público del cual están revestidos los casos de filiación. Se trata "nada más y nada menos que el derecho a la igualdad de los hijos nacidos en nuestra tierra, derecho garantizado expresamente por nuestra Constitución". *Almodóvar v. Méndez Román,* 125 D.P.R. 218, 264 (1990).

---

(9) Refiérase a *People v. Castro,* 545 N.Y.S.2d 985 (1989); *Ex parte Perry,* supra; S.E. Renskers, *Trial by Certainty: Implications of Genetic "DNA Fingerprints",* 39 Emory L.J. 309 (1990); C.T. Blair, *Spencer v. Commonwealth and Recent Developments in the Admissibility of DNA Fingerprint Evidence,* 76 Va. L. R. 853 (1990); J.G. Petrosinelli, *The Admissibility of DNA Typing: A new methodology,* 79 Geo. L.J. 313 (1990), y artículos sobre evidencia científica y tecnológica (*Scientific and Technological Evidence*) 43 Emory L.J. 867–1070 (1994). Véanse, además: *People v. Contreras,* 615 N.E.2d 1261 (1993); *People v. Mehlberg,* 618 N.E.2d 1168 (1993); *People v. Keene,* 591 N.Y.S.2d 733 (1992); *State v. Williams,* 599 A.2d 960 (1991); *Government of Virgin Islands v. Penn.,* 838 F. Supp. 1054.(D. V.I. 1993); *People v. Courts,* 517 N.W.2d 785 (1994), entre otros.

En segundo lugar, "[e]n materia de filiación el Derecho puertorriqueño ha ido abriendo camino a través de la enmarañada jungla de prejuicios[,] convencionalismos sociales y tecnicismos de ley para hacer que brille la verdad y se reconozca a todos los fines legales la relación biológica entre padres e hijos". *Ramos v. Marrero*, 116 D.P.R. 357, 358 (1985). En *Calo Morales v. Cartagena Calo*, 129 D.P.R. 102, 119 (1991), expusimos la trayectoria jurisprudencial sobre los cambios en nuestro sistema de impugnación de la presunción de paternidad el cual se ha tornado en "uno más flexible y abierto a los adelantos científicos y a las corrientes constitucionales modernas en aspectos de filiación".

■ Considerando lo antes expuesto, por el claro objetivo que tuvo la enmienda a la Regla 82 de Evidencia, *supra*, y hasta que la Asamblea Legislativa actúe sobre esto, la expresión *"hija o hijo"* del inciso (C) de la citada regla debe incluir a los hijos biológicos de un alegado padre (fallecido). Procede, por ende, que el tribunal ordene la realización de las pruebas a los demandados, Wanda León y Víctor León Rallat, hijos biológicos del Sr. Víctor León.[10]

*Advertimos que, al igual que en la utilización de otras pruebas científicas en pleitos de filiación, el tribunal tiene el ineludible deber de ponderar cuidadosamente la admisibilidad del resultado de estas pruebas y, de ser admitidas, adjudicar su justo valor probatorio junto al resto de la evidencia en el caso.* Refiérase a las Reglas 82(B), 19 y 11 de Evidencia, 32 L.P.R.A. Ap. IV.[11]

---

[10] En sus escritos la parte demandada-recurrida amparó su negativa a someterse a las referidas pruebas en la interpretación de la Regla 82(C) de Evidencia, 32 L.P.R.A. Ap. IV. Incidentalmente señala *como posibilidad* una violación a su derecho a la intimidad. *Por no estar adecuadamente planteada la alegada violación constitucional, rehusamos adjudicar en el abstracto la misma.*

[11] En la literatura científica abunda información sobre los criterios con los cuales debe cumplir una prueba a los efectos de su admisibilidad tanto en el foro científico como en el foro judicial. En síntesis, se recomienda examinar los siguientes:

"(1) *Confiabilidad o Precisión*—capacidad de una prueba para obtener resultados reproducibles, o sea, que aplicando la misma metodología siempre se obtendrán los mismos resultados;

Por los fundamentos antes señalados, *se expide el auto, se revoca la resolución recurrida y se declara con lugar la moción de la parte peticionaria solicitando que se ordenen las pruebas genéticas correspondientes. Se devuelve el caso al tribunal de instancia para la continuación de los procedimientos consistentes con lo aquí resuelto.*

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Andréu García concurrió con el resultado sin opinión escrita.

---

"(2) *Validez*—capacidad para discriminar entre lo que es y lo que no es. Esto incluye:

"(a) *Especificidad*—la detección correcta de lo que no es. (Por ejemplo que puede excluir al noventa y nueve por ciento (99%) de los hombres falsamente imputados, esto es, un noventa y nueve por ciento (99%) de especificidad).

"(b) *Sensibilidad*—la detección correcta de lo cierto. Capacidad de no excluir padres putativos que podrían ser el padre biológico.

"(3) *Productividad*—capacidad de detectar lo que en pruebas anteriores no fue detectado. La capacidad para excluir a un padre putativo que no pudo ser excluido en pruebas anteriores."

En general, las pruebas se evalúan a base de la validez de su metodología y de la confiabilidad del proceso seguido en el laboratorio que las realiza. Tomado de Rodríguez Trinidad, *supra*, n. 6, págs. 3–7. Véanse, además: *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); M.A. Berger, *Procedural Paradigms for Applying the Daubert Test*, 78 Minn. L.Rev. 1345 (1994); J. Sanders, *Scientific Validity, Admissibility, and Mass Torts After Daubert*, 78 Minn. L. Rev. 1387 (1994), entre otros.