Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton.
Por entender que este caso debió ser desestimado, sin más, por tratarse de cosa juzgada, disiento de la Opinión emitida por una mayoría de este Tribunal. Con su decisión, a pesar de establecer que la acción de anulabilidad de adopción caducó y que por ello los lazos adoptivos no pue-den ser impugnados, este Foro devuelve el caso al Tribunal de Primera Instancia para que se resuelva si el adoptado es hijo del supuesto padre biológico. Ese dictamen contra-dictorio y dilatador tiene el propósito de que el adoptado evite incurrir en incesto o casarse con sus parientes en los grados de consanguineidad prohibidos por nuestro ordenamiento. En nuestra opinión, este proceder es espe-culativo y posiblemente presenta una controversia injusti-ciable por tratarse de un asunto que no está maduro.
I
El Sr. Samuel Beníquez Méndez (adoptado) y su madre biológica, la Sra. Antonia Beníquez Seguí (madre biológi-ca), acudieron al foro judicial para impugnar la adopción por parte del matrimonio Beníquez Méndez (adoptantes). El adoptado nació en 1971 y, al anotarse su nacimiento en el Registro Demográfico, no se divulgó el nombre de su *276 padre biológico. Al año siguiente, el matrimonio Beníquez Méndez peticionó su adopción. En su escrito ante el foro primario, los adoptantes alegaron tener bajo su custodia al adoptado y que eran los tíos de la madre biológica, quien vivía con ellos por no tener recursos para su sustento. Esta última consintió a la adopción, la cual se concedió en 1973.
Casi treinta años después, en 2003, el adoptado y la madre biológica presentaron ante el Tribunal de Primera Instancia una petición de nulidad de la adopción. Esencial-mente, argumentaron que el consentimiento de la madre biológica a la adopción estuvo viciado, pues esta fue coac-cionada e intimidada por los adoptantes. Por lo tanto, ale-garon que el tribunal nunca tuvo jurisdicción para conce-der la adopción. Asimismo, alegaron que el menor siempre fue criado por su madre biológica y que ambos se mudaron de la casa de los adoptantes cuando el adoptado tenía seis años. Mediante resolución no fundamentada, el foro prima-rio declaró “no ha lugar” la petición. Esa decisión nunca fue apelada o revisada, por lo que advino final y firme.
Luego, en 2004, la madre biológica y el adoptado insta-ron una segunda demanda sobre nulidad de adopción y declaración de filiación. Esta vez, alegaron que la madre biológica fue coaccionada, amenazada y sujeta a presiones morales, emocionales y religiosas por parte de sus familia-res y compañeros feligreses para que consintiera a la adopción. Esto, pues el alegado padre biológico del adop-tado es el Sr. Teófilo Vargas Seín t/c/c Aarón, líder espiri-tual de la Congregación Mita. Por ello, solicitaron que se decretara la nulidad de la adopción y que se ordenara al Registro Demográfico inscribir al adoptado como hijo de sus padres biológicos.
El foro primario desestimó sumariamente los reclamos, por entender que el dictamen judicial que denegó la pri-mera demanda era cosa juzgada. En cuanto a la nueva alegación sobre quién era el padre biológico, concluyó que aplicaba la doctrina de impedimento colateral por *277 sentencia. Inconformes, los demandantes acudieron ante el Tribunal de Apelaciones, el cual revocó al foro primario. El foro apelativo intermedio concluyó que no aplicaba la doc-trina de cosa juzgada al caso de autos y que la acción de nulidad de adopción no había caducado.
Insatisfechos, los adoptantes y el supuesto padre bioló-gico acuden ante nos. Plantean que la acción presentada por los demandantes caducó, que la controversia presen-tada en la demanda es cosa juzgada o existe impedimento colateral por sentencia y que transcurrió en exceso el tér-mino para interponer una moción de relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. V, para dejar sin efecto la desestimación dic-tada en el 2003.
II
La opinión del Tribunal resuelve que la doctrina de cosa juzgada no aplica a la acción para impugnar un procedi-miento de adopción. Esto, a pesar de que concluye que se cumplen con todos los requisitos para su aplicación en el caso de autos. Para ello, señala que la institución de la filiación constituye un interés público superior. Por enten-der que ese dictamen amenaza la estabilidad de la filiación jurídica entre adoptados y padres adoptivos, resolveríamos lo contrario. Entendemos que el interés legislativo ha sido claro al buscar la finalidad del proceso de adopción.
Concluir que no aplica la doctrina de cosa juzgada a casos como el de autos permitiría a un adoptado impugnar su adopción en repetidas ocasiones. Solo se le requeriría instar esa acción en el término de caducidad dispuesto para ello, sin importar que exista un dictamen adverso que haya advenido final y firme. Siendo así, ignorar la doctrina de cosa juzgada en estos casos les resta finalidad a los de-cretos de adopción y le brinda al adoptado más oportuni- *278 dades para atacar su adopción. Este proceder no es cónsono con la política pública a favor de la estabilidad de las relaciones jurídicas establecidas mediante decreto de adopción. Incluso, tal y como menciona la Opinión del Tribunal, es norma establecida que “los adoptantes y adopta-dos no goza[n] de la facultad de poder dejar sin efecto, unilateral o bilateralmente, la adopción consumada por haber experimentado un cambio de criterio con referencia a su deseabilidad de haber consentido a la adopción”. Opinión mayoritaria, pág. 237, citando a R. Serrano Geyls, Derecho de familia de Puerto Rico y legislación comparada, San Juan, Ed. Programa de Educación Jurídica Continua de la U.I.P.R., 2002, Vol. II, pág. 1187.
Asimismo, la opinión del Tribunal recalca la naturaleza irrevocable de un decreto de adopción. Esta irrevocabilidad y el interés legislativo de darle finalidad a los procesos de adopción se refleja claramente en los términos de caduci-dad dispuestos para instar la acción de anulabilidad de adopción. Para el momento de la adopción en cuestión, el referido término era de dos años. Art. 613E del Código de Enjuiciamiento Civil, supra. Posteriormente, la Ley Núm. 9-1995 redujo ese término a un año. Finalmente, la Ley de Reforma Integral de Procedimientos de Adopción de 2009 lo redujo a seis meses a partir de la fecha cuando el decreto de adopción advenga final y firme. 32 L.P.R.A. sec. 2699r. Esta reducción del término de caducidad disponible para anular un decreto de adopción demuestra consistente-mente su naturaleza irrevocable y, por ende, su finalidad.
De otrá parte, debe recalcarse que el legislador impuso un término de caducidad y no de prescripción. La caduci-dad conlleva la pérdida automática del derecho por no ejer-citarse en el transcurso de cierto plazo. Véase Castro v. Negrón, 159 D.P.R. 568, 596 (2003). Siendo así, el legisla-dor quiso para esta acción el término con consecuencias concluyentes, con el ánimo de proteger la estabilidad de la filiación jurídica adoptiva. De la misma forma, limitó la *279 acción para impugnar la filiación. Véanse: Mayol v. Torres, 164 D.P.R. 517, 553 (2005); Castro v. Negrón, supra; Sánchez v. Sánchez, 154 D.P.R. 645, 669 (2001); Almodóvar v. Méndez Román, 125 D.P.R. 218, 260 (1990). Por todo lo anterior, entendemos que ignorar la aplicación de la doc-trina de cosa juzgada en casos como el de autos, menoscaba la irrevocabilidad de la filiación jurídica que el ordena-miento protege mediante la imposición de un breve tér-mino de caducidad para su impugnación.
Por último, no estamos de acuerdo con devolver el caso al foro primario para determinar la filiación biológica del adoptado. En primer lugar, ordenar al supuesto padre bio-lógico que se someta involuntariamente a pruebas genéti-cas para determinar si es el padre del adoptado constituye una violación a su derecho constitucional a la intimidad. Véase: Art. II, Secs. 8 y 10 Const. E.L.A., L.P.R.A., Tomo 1. Anteriormente, hemos permitido la transgresión de este derecho constitucional en circunstancias en las que el soli-citante tiene intereses pecuniarios que dependen de esa determinación, como lo serían la petición de alimentos o la reclamación de derechos hereditarios. Véanse: Mayol v. Torres, supra; Vincenti v. Saldaña, 157 D.P.R. 37 (2002). Es-tas circunstancias no están presentes en el caso de autos, por lo que no existe un interés apremiante de reconocer la relación biológica entre padres e hijos. Mayol v. Torres, supra.
En segundo lugar, las justificaciones en las que des-cansa la opinión mayoritaria para ordenar la determina-ción de paternidad son prematuras y especulativas. El adoptado no ha solicitado que se determine su filiación bio-lógica para evitar incurrir en alguna de las conductas pro-hibidas por el Art. 138 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 539. Tampoco ha manifestado interés alguno en casarse con alguna pariente del supuesto padre biológico. Mucho menos, ha manifestado interés en relacio-narse incestuosamente con un pariente del supuesto padre *280 biológico, según el Art. 138 del Código Civil. íd. Siendo así, la opinión mayoritaria está brindando un remedio que no se solicitó, para disponer de una controversia que no se presentó ante nos y que, con toda probabilidad, no estaría madura para atenderse.
Más aún, las fuentes que se utilizan para justificar este remedio no tratan sobre una determinación de filiación biológica luego de emitido un decreto de adopción. Véanse: Mayol v. Torres, supra; Castro v. Negrón, supra; Rivera Pérez v. León, 138 D.P.R. 839 (1995); Calo Morales v. Cartagena Calo, 129 D.P.R. 102 (1991); Almodóvar v. Méndez Román, supra; Ramos v. Marrero, 116 D.P.R. 357 (1985).
Contrario a su aseveración, en el más reciente pronun-ciamiento del legislador sobre nuestro derecho de adop-ción, la Ley de Reforma Integral de Procedimientos de Adopción de 2009 se declaró como política pública “que el procedimiento de adopción sea ... confidencial, para prote-ger el derecho constitucional a la intimidad de las partes”. 32 L.P.R.A. sec. 2699.
Por lo tanto, nos parece errado ordenar unas pruebas genéticas para lograr una determinación de filiación bioló-gica que no tendrá consecuencias patrimoniales para las partes, debido a que ya existe un decreto de adopción que no puede ser anulado. Ello amenaza la estabilidad de las filiaciones jurídicas y establece un precedente contra la confidencialidad de los procesos de adopción.