Evelyn ERBSTOESZER, by her guardian, Rita Leyes,
Plaintiff-Appellant,†

Louis SULLIVAN, Secretary of the Department of Health
& Human Services, Sheboygan County, and Rock
County, Subrogated Parties,

v.

AMERICAN CASUALTY COMPANY of Reading, Penn-
sylvania, and Natalie Witte, Defendants-Respondents.

Court of Appeals

*No. 91–0453. Submitted on briefs April 22, 1992.—Decided
June 4, 1992.*

(Also reported in 486 N.W.2d 549.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Jon P. Axelrod* and *William D. Mollway* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.,* of Madison.

For the defendants-respondents the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Steven D. Ebert,* assistant attorney general, and *Robert R. Studt* of *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   Evelyn Erbstoeszer, a patient at the University of Wisconsin Hospital in Madison, was injured while walking with a hospital nurse, Natalie Witte. She sued Witte and her insurer, American Casualty Company, for damages; she appeals from a judgment dismissing her complaint. The issues are whether the trial court erred when it: (1) dismissed Erbstoeszer's

claim against Witte based on sec. 51.61, Stats., which gives mental health patients the right to prompt and adequate treatment; (2) permitted Witte's attorney to ask leading questions of one of her own witnesses; and (3) quashed Erbstoeszer's subpoena seeking access to medical records of other patients·at the hospital. She also asks, based on these claimed errors, that we grant a new trial in the interests of justice. We resolve all issues against Erbstoeszer and affirm the judgment.

Erbstoeszer was a patient in the hospital's locked psychiatric ward. She was being treated with Tegretol, a drug which can cause side effects similar to intoxication, including an unsteady gait. She was injured one evening when, while under the effects of the drug, she fell while on a recreational walk with Witte and three other patients on the hospital grounds.

Erbstoeszer claimed that Witte and the hospital were negligent in allowing her to fall. She also sought to hold them liable under the so-called patients' "bill of rights," sec. 51.61, Stats., which provides, among other things, that mental health patients "shall . . . [h]ave a right to receive prompt and adequate treatment, rehabilitation and educational services appropriate for his or her condition." Section 51.61(1)(f). The trial court dismissed the claim prior to trial, ruling that the statute did not create a cause of action under the facts pled. The case then went to trial on the negligence issue, and the jury found Witte not negligent.

Erbstoeszer argues first that Witte's actions in taking her for the walk on which she fell constituted inadequate "treatment" within the meaning of sec. 51.61(1)(f), Stats., and thus the trial court should not have dismissed her statutory cause of action. It is a question of statutory interpretation—one of law, which

we consider independently, reviewing the trial court's decision *de novo. State v. Wittrock,* 119 Wis. 2d 664, 669, 350 N.W.2d 647, 650 (1984); *State v. Dean,* 163 Wis. 2d 503, 510, 471 N.W.2d 310, 313 (Ct. App. 1991).

When we construe a statute, our primary objective is to give effect to the intent of the legislature. In determining that intent, our first resort is to the language of the statute itself. *Marshall-Wisconsin Co. v. Juneau Square Corp.,* 139 Wis. 2d 112, 133, 406 N.W.2d 764, 772 (1987). And we are obliged to give that language its "ordinary and accepted meaning." *City of West Allis v. Rainey,* 36 Wis. 2d 489, 495, 153 N.W.2d 514, 517 (1967).

Doing so here, we conclude that sec. 51.61(1)(f), Stats., does not create a cause of action in this case because Witte's decision to take Erbstoeszer on a recreational walk does not invoke the "adequate treatment" guarantees of the statute.

Elsewhere in ch. 51 "treatment" is defined as "those psychological, educational, social, chemical, medical, or somatic techniques designed to bring about [the] rehabilitation of a mentally ill . . . person." Section 51.01(17), Stats. There is no suggestion in this case that Witte or anyone else at the hospital withheld or improperly administered medical or psychiatric treatment to Erbstoeszer; and, like the trial court, we reject her claim that Witte's decision to have her join other patients on the walk is actionable under sec. 51.61(1)(f), Stats.

The statute is, as we have noted, part of a comprehensive set of "patients' rights." In addition to the right to prompt and adequate treatment, rehabilitation and educational services appropriate to their condition, as specified in subsection (f), sec. 51.61, Stats., mental

health patients are given a variety of other "rights" including: the right to refuse to perform labor for the institution; the right to correspond with legal counsel, courts, government officials and physicians and psychologists, and to petition the court for review of commitment orders; the right to refuse medication and to be free from nonemergency physical restraint or isolation; the right not to be subjected to experimental research or drastic treatment methods without informed consent; and the right to religious worship, a humane environment, confidentiality of records, privacy, personal clothing and visitation. These rights are secured to mental health patients by sec. 51.61(7) which provides enforcement procedures culminating in the recovery of damages for the unlawful denial or violation of a particular "right."

Whether the various treatment techniques employed by the hospital and its staff "to bring about [Erbstoeszer's] rehabilitation" were adequate is an issue independent of whether Witte exercised due care and proper judgment in allowing her to go for a walk on the evening in question. That, after all, is Erbstoeszer's claim in this case: that Witte exercised poor judgment in taking her on that walk. And it is the very claim that went to the jury. Section 51.61(1)(f), Stats., does not give Erbstoeszer an additional statutory cause of action for the negligence she asserts in this lawsuit.[1]

---

[1]Erbstoeszer also contends that the statute creates a higher standard of care for health care providers—that while the "standard of care for nurse malpractice is merely the degree of care, skill, and judgment which is exercised in the same or similar circumstances [ ] by the average registered nurse," and "a 'mistake' is not negligence unless it fails to conform to the 'average' standard," the legislature "wanted higher standards to apply to inpatients in psychiatric hospitals." Thus, she asserts that "the

Erbstoeszer next argues that the trial court erred when it allowed Witte's counsel to ask leading questions of Dr. Warren Olson, Witte's supervisor at the hospital. It is a general rule of evidence that, in civil cases, leading questions may only be asked of an "adverse party," or a witness "identified with" an adverse party. Section 906.11(3), Stats.

It is also a rule that evidentiary rulings are committed to the trial court's discretion. *State v. Baldwin,* 101 Wis. 2d 441, 455, 304 N.W.2d 742, 750 (1981). Thus, the question on appeal is not whether we, were we ruling initially on the matter, would have ruled as the trial court did, but whether the trial court exercised its discretion in accordance with the facts of record and accepted legal standards. *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). We will not find an abuse of discretion if there is a reasonable basis for the trial court's determination, and we generally will "look for reasons to sustain a trial court's discretionary ruling[s]." *State v. Thompson,* 146 Wis. 2d 554, 558–59, 431 N.W.2d 716, 718 (Ct. App. 1988).

The trial court properly exercised its discretion in allowing both parties to examine Dr. Olson with leading

Legislature has clearly abandoned the 'average' test and instead, has imposed the statutory standard of sec. 51.61, Stats."

We disagree. We see no indication that the legislature intended to apply a higher standard of care in negligence actions by virtue of sec. 51.61(1)(f), Stats. The statute simply does not discuss standards of care owed in negligence actions. The language and context of the statute indicate that it is intended to help insure that patients' rights are protected, not to expand or otherwise change the law of negligence.

questions. There was extensive briefing and argument on the issue, after which the court ruled that, under the highly "unusual . . . circumstances" of the case and Dr. Olson's position and participation in it, he was in fact "adverse to both parties in th[ese] proceedings."

In its decision on postverdict motions, the court stated:

> I gave substantial consideration to my decision relative to Dr. Olson. I viewed it from all different aspects—whether or not plaintiff should be allowed or only be allowed to directly examine Dr. Olson, whether the defendants should be allowed to cross-examine, whether both parties should be allowed to cross-examine and treat Dr. Olson as an adverse witness, and frankly, the Court concluded . . . the latter, that both parties could ask direct questions of Dr. Olson.
>
> Plaintiff argued that failure to allow him to do so would severely hamper his ability to solicit from Dr. Olson the information that he wanted. Counsel for the defense set forth the same argument to the Court.
>
> It is the perception of the Court that it is the law of this state that evidence should be produced in order to get an ascertainment of the truth and, in my opinion, the ability of both parties to cross-examine Dr. Olson in this case gave everybody an opportunity to bring out any assertion of truth that might have been presented in this case.

In short, the trial court considered that Olson was adverse to Erbstoeszer because he was Witte's supervisor and a hospital employee; and it also considered him to be adverse to Witte and her insurer, who claimed that it was Olson, not Witte, who was negligent in his care and supervision of Erbstoeszer. The court thus explained its decision in a manner that allows us to conclude that it undertook a reasonable inquiry and examination of the

facts and arrived at a conclusion a reasonable judge could reach. In other words, it exercised its discretion in the matter. *Burkes v. Hales,* 165 Wis. 2d 585, 590–91, 478 N.W.2d 37, 39 (Ct. App. 1991). And because Erbstoeszer has not established that the decision to allow the questioning was legally unsound, we may not overturn it.

Erbstoeszer argues, however, that it was also improper for the trial court to "interrupt the orderly presentation of [her] case" by allowing Witte to cross-examine Olson directly after Erbstoeszer had finished her questions.

"A trial judge in the exercise of properly expressed discretion may, of course, permit the alteration of the usual order of proof." *Schueler v. City of Madison,* 49 Wis. 2d 695, 704, 183 N.W.2d 116, 122 (1971). When the court does so, "the record must clearly show that the judge was conscious of the implications of his [or her] action and show he [or she] exercised discretion on a legally recognized basis." *Id.*

Again, we see no error. As indicated, the trial court ruled that both parties could adversely examine Olson; and Witte did so immediately after Erbstoeszer's questioning—during what would have been her time to ask clarifying questions. Allowing her to do so, the court considered Witte's argument that she did not want to call Olson as her own witness later in the trial because she didn't want to "vouch [ ] for his credibility." Under these circumstances, it was an appropriate exercise of discretion.

Erbstoeszer next argues that the trial court erred when it quashed her subpoena seeking access to the medical records of the other patients who accompanied her on the walk.

"The right to discovery only extends to material relevant to the subject matter involved in a pending action." *Shibilski v. St. Joseph's Hospital,* 83 Wis. 2d 459, 470, 266 N.W.2d 264, 270 (1978). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Section 904.01, Stats. Determination of the relevancy of proffered evidence is, like other evidentiary rulings, discretionary with the trial court, *Baldwin,* 101 Wis. 2d at 455, 304 N.W.2d at 750, and our review of this issue is thus subject to the rules discussed above.

The trial court explained its postverdict decision:

[No] proof [was] presented to the Court other than potential mere speculation that an examination of the [patient's] records would in fact have developed or produced any information which would have affected their ability to go on the walk on the evening in question or the ability of the supervising nurse to control them on such a walk . . ..

The diagnosis under which they suffer, in the Court's opinion, was at that time and is at this time of no relevance to their conduct which may have expired or transpired on the evening in question.

[T]he diagnosis of that person would not, in my opinion, and from the records, have had any relevancy to how that patient conducted him or herself on the evening in question.

There is no evidence in this record—and such evidence could have been solicited at trial—as to the conduct of two of the patients on the night in question which was anything out of the ordinary from other persons that may have been on that ward at that time.

It is a legally sound exercise of discretion. The medical condition of the patients joining Erbstoeszer on the walk does not have a tendency to make the existence of any fact that is of consequence to Erbstoeszer's negligence action against Witte more or less probable.

Finally, Erbstoeszer requests that we grant a new trial in the interests of justice, based on her several claims of error. Because we have held that the trial court properly dismissed her claim under sec. 51.61, Stats., and have sustained the court's evidentiary rulings, we need not consider the argument further.

*By the Court.*—Judgment affirmed.