IN the INTEREST OF ANDREA P.B., a person Under the Age of 18:

SHEBOYGAN COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, Petitioner-Respondent,†

v.

JODELL G., Respondent-Appellant. [Case No. 00–1618]

IN the INTEREST OF APRIL A.B., a person Under the Age of 18:

SHEBOYGAN COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, Petitioner-Respondent,†

v.

JODELL G., respondent-Appellant. [Case No. 00–1619]

IN the INTEREST OF ASHLEY J.B., a person Under the Age of 18:

SHEBOYGAN COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, Petitioner-Respondent,†

v.

JODELL G., Respondent-Appellant. [Case No. 00–1620]

Court of Appeals

*Nos. 00–1618, 00–1619, 00–1620. Submitted on briefs November 9, 2000.—Decided December 13, 2000.*

†Petition to review denied.

2001 WI App 18

(Also reported in 625 N.W.2d 307.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Dwight D. Darrow* of *Darrow, Dietrich & Hawley, S.C.* of Sheboygan.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James P. Van Akkeren,* assistant district attorney, and *Robert J. Wells,* district attorney.

On behalf of Andrea P.B., April A.B. and Ashley J.B., the cause was submitted on the brief of guardian ad litem *Douglas Leppanen* of *Holden & Hahn, S.C.* of Sheboygan.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1.  SNYDER, J.   Jodell G. seeks leave to appeal from an order of the circuit court denying her motion to

dismiss the CHIPS petitions involving her three children as untimely pursuant to WIS. STAT. § 48.24(5) (1997–98).[1] Jodell argues that because the Sheboygan County Department of Health and Human Services intake worker did not request that the CHIPS petitions be filed within forty days of receipt of the referral information, the CHIPS petitions must be dismissed with prejudice pursuant to § 48.24(5). We agree and reverse the order of the circuit court.[2]

## FACTS

¶ 2.   This appeal concerns three CHIPS petitions involving Andrea P.B., April A.B. and Ashley J.B., children of Jodell. On June 29, 1999, the Sheboygan County Department of Health and Human Services, Division of Social Services (Department) received a phone call report of the possible child abuse of April by Eric G., her stepfather and Jodell's husband. An intake worksheet was completed immediately upon receipt of this information and intake worker Mary Fournier was assigned to the case. Based upon the allegations in this report, Fournier interviewed April that same day, June 29, 1999. April stated that on one occasion, Eric "yelled at us for a couple of hours and threw stuff around" and "screwed all the windows in the house shut." April also stated that Eric had "hit and pushed" her around, thrown her on a bed, and gave her a "back rub and ended up touching [her] privates" which she described as the area between her legs. She indicated that she had no clothes on when this incident occurred. In addition, April stated that another time, Eric had

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] This is an expedited appeal under WIS. STAT. RULE 809.17.

touched her breasts while putting lotion on her sunburned back. She described Eric as "mean" and indicated that she was afraid that he would "beat" her. After interviewing April, Fournier and City of Sheboygan Police Officer Dave Obremski then interviewed Ashley, Andrea, Jodell and Eric on June 30, 1999. All admitted that Eric had a drinking problem and a temper, but denied any physical or sexual assaults.

¶ 3. On July 6, 1999, Fournier's colleague, Liane Pizl, attempted to interview Andrea and Ashley. On July 21, 1999, Fournier spoke with Jodell and on July 27, 1999, she spoke with Eric. Criminal charges were filed against Eric on July 22, 1999. On August 9, 1999, Fournier received a message from Jodell, indicating that upon the advice of her lawyer, Jodell would have no further contact with the Department. Fournier then referred the matters to the district attorney's office, requesting CHIPS petitions on August 10, 1999, for Andrea and Ashley and on August 11, 1999, for April. Three CHIPS petitions were filed on September 1, 1999.

¶ 4. On October 1, 1999, Jodell filed a motion to dismiss the three CHIPS petitions, alleging that Fournier failed to file the requests for CHIPS petitions within forty days as required by WIS. STAT. § 48.24(5). After a briefing schedule, the circuit court denied the motion to dismiss at a hearing on April 17, 2000, holding that the request for CHIPS petitions was timely. A motion for reconsideration was heard on May 18, 2000, but was denied in a written order dated June 2, 2000. A petition for leave to appeal a nonfinal judgment or order was received by this court on June 12, 2000, and leave to appeal was granted on August 8, 2000.

## DISCUSSION

¶ 5. Our task is to construe WIS. STAT. § 48.24(5). Construction of a statute is a question of law which we review de novo. *See J.W.T. v. State*, 159 Wis. 2d 754, 760–61, 465 N.W.2d 520 (Ct. App. 1990).

¶ 6. WISCONSIN STAT. § 48.24 addresses receipt of jurisdictional information in CHIPS cases and outlines the sequential procedures to be followed by a CHIPS intake worker during an intake inquiry. The statutes stand silent as to the standard of proof required for an intake worker to determine whether sufficient evidence supports the allegations. Section 48.24(1) states that information indicating that a child is in need of protection or services shall be referred to the intake worker. The intake worker must then conduct an intake inquiry to determine whether the available facts establish prima facie jurisdiction and to determine the best interests of both the child and the public. *See id.*

¶ 7. The intake worker must conduct the intake inquiry in accordance with local intake rules promulgated under WIS. STAT. § 48.06(1) or (2). As part of the intake inquiry, the intake worker must inform the child and the child's parents that they may request counseling. *See* WIS. STAT. § 48.24(1m). In addition, the intake worker conducts conferences, with notice to the child, parents, guardian and legal custodian. *See* § 48.24(2)(a). However, the intake worker cannot compel any child or other person to appear at any conference, participate in a multidisciplinary screen, produce any papers or visit any place. *See* § 48.24(2)(b).

¶ 8. Before meeting with parents and children during an intake inquiry, the intake worker is required to provide certain information to certain persons. The intake worker must provide notice to the parents and

children twelve years of age or older that a referral might result in the filing of a formal petition and must explain the allegations that the petition could contain and the nature and possible consequences of the proceedings. *See* WIS. STAT. § 48.243(1)(a). If the intake worker determines as a result of the intake inquiry that the child should be referred to the court, the intake worker shall ask the district attorney, corporation counsel or other designated official that a petition be filed. *See* WIS. STAT. § 48.24(3).

¶ 9. WISCONSIN STAT. § 48.24(5), the statute at issue here, states in relevant part:

> The intake worker shall request that a petition be filed, enter into an informal disposition or close the case within 40 days or sooner of receipt of referral information. . . . The judge shall dismiss with prejudice any such petition which is not referred or filed within the time limits specified within this subsection.

Jodell argues that the language of § 48.24(5) clearly requires dismissal of the three CHIPS petitions because the request for the petitions was not filed in a timely manner. We agree.

¶ 10. On June 29, 1999, Fournier received a report of the possible child abuse of April by Eric; an intake worksheet was completed immediately upon receipt of this information. That same day, April informed Fournier that Eric had sexually assaulted her and that he had been both verbally and physically abusive. However, Fournier did not refer these matters to the district attorney's office until August 10, 1999, for Andrea and Ashley and August 11, 1999, for April. August 10, 1999, is forty-two days past the receipt of

the initial phone call reporting the abuse and the interview with April. August 11, 1999, is day forty-three.

¶ 11.   The Department argues that its receipt of a report of abuse is not receipt of referral information to an intake worker pursuant to WIS. STAT. § 48.24(5). We disagree.

¶ 12.   Resolution of this issue rests upon the interpretation of the phrase "receipt of referral information," which triggers the forty-day time limit in WIS. STAT. § 48.24(5). "Receipt of referral information" is not defined in the statute or anywhere else in WIS. STAT. ch. 48. Appellate courts have confronted, but have not yet decided, the question of when § 48.24(5) time limits begin to run (i.e., what constitutes receipt of referral information).

■■■■

¶ 13.   Our first resort is to the language of the statute itself. *See Erbstoeszer v. Am. Cas. Co.*, 169 Wis. 2d 637, 642, 486 N.W.2d 549 (Ct. App. 1992). Courts are obliged to give statutory language its ordinary and accepted meaning. *See id.* In the absence of a statutory definition, all words must be construed according to their common and approved usage. *See Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995). Common and approved usage of a word may be established by reference to a dictionary definition. *See id.*

¶ 14.   "Referral" is defined as "an act of referring; the state of being referred . . . an instance of referring . . . ."  RANDOM HOUSE DICTIONARY 1620 (2d ed. 1987). "Refer" is defined as "to direct for information or anything required . . . to direct the attention or thoughts of . . . to hand over or submit for information, consideration, decision, etc." *Id.* A referral, then, is the act of directing attention to something. The June 29, 1999

phone message calling the Department's attention to the potential abuse of April, coupled with the specific information about the verbal, physical and sexual abuse provided by April during the June 29, 1999 interview, directed the Department's attention to the potential endangerment of the girls. Thus, the phone call and the interview are referral information.

¶ 15.   The Department argues that the WIS. STAT. § 48.24(5) forty-day time period should commence later than the date of the phone call and interview with the intake worker. It relies on *J.W.T. v. State*, 159 Wis. 2d 754, 465 N.W.2d 520 (Ct. App. 1990), for this proposition. This reliance is misplaced.

¶ 16.   In *J.W.T.*, we declined to adopt a bright-line rule regarding the commencement of the forty-day time limit of WIS. STAT. § 48.24. In *J.W.T.*, a Barron county juvenile intake officer received information from J.W.T.'s high school principal that J.W.T. had been involved in a car theft and was being held in detention in Duluth, Minnesota. *See J.W.T.*, 159 Wis. 2d at 757. The intake worker contacted local law enforcement, who had no record of the incident. *See id.* While J.W.T.'s mother confirmed the arrest and detention, it took numerous phone calls to both Wisconsin and Minnesota law enforcement and over six weeks before the intake worker finally received a police report detailing the incident in question. *See id.* at 757–59. Thirty-nine days after receiving the police report, the intake worker referred the matter to the district attorney's office for a delinquency petition. *See id.* at 760. We held that the referral information was received, and thus the forty-day time limit was triggered, on the day the intake worker received the police report and therefore the recommendation was timely filed. *See id.* at 763.

¶ 17. Moreover, these are CHIPS petitions and *J.W.T.* was a delinquency case, not a CHIPS case. *J.W.T.* was decided in 1990 when CHIPS and delinquency procedures were contained within the same statute. On July 1, 1996, the delinquency portion of WIS. STAT. ch. 48 was removed with the creation of WIS. STAT. ch. 938 and each chapter now contains its own procedure. *See* 1995 Wis. Act 77, § 9400. While CHIPS WIS. STAT. § 48.24(5) still mandates that the intake worker request that a petition be filed within forty days of receipt of referral information or the petition shall be dismissed with prejudice, delinquency WIS. STAT. § 938.24(5) allows for more discretion:

> The intake worker shall request that a petition be filed . . . within 40 days or sooner of receipt of referral information. . . . The judge shall grant appropriate relief as provided in s. 938.315(3)[3] with

[3] WISCONSIN STAT. § 938.315 provides:

**Delays, continuances and extensions. (1)** The following time periods shall be excluded in computing time requirements within this chapter:

(a) Any period of delay resulting from other legal actions concerning the juvenile, including an examination under s. 938.295 or a hearing related to the juvenile's mental condition, prehearing motions, waiver motions and hearings on other matters.

(b) Any period of delay resulting from a continuance granted at the request of or with the consent of the juvenile and counsel.

(c) Any period of delay caused by the disqualification or substitution of a judge or by any other transfer of the case or intake inquiry to a different judge, intake worker or county.

(d) Any period of delay resulting from a continuance granted at the request of the representative of the public under s. 938.09 if the continuance is granted because of the unavailability of evidence material to the case when he or she has exercised due diligence to obtain the evidence and there are reasonable grounds to believe that the evidence will be available at the later date, or to allow him or her additional time to prepare the case and additional

respect to any such petition which is not referred or filed within the time limits specified within this subsection. . . .

The CHIPS provisions remain mandatory while the delinquency provisions, like those provisions addressed in *J.W.T.*, are discretionary. Furthermore, in *J.W.T.* the court was not asked to interpret "receipt of referral information" but to consider what consti-

time is justified because of the exceptional circumstances of the case.

(dm)   Any period of delay resulting from court congestion or scheduling.

(e)   Any period of delay resulting from the imposition of a consent decree.

(f)   Any period of delay resulting from the absence or unavailability of the juvenile.

(fm)   Any period of delay resulting from the inability of the court to provide the juvenile with notice of an extension hearing under s. 938.365 due to the juvenile having run away or otherwise having made himself or herself unavailable to receive that notice.

(g)   A reasonable period of delay when the juvenile is joined in a hearing with another juvenile as to whom the time for a hearing has not expired under this section if there is good cause for not hearing the cases separately.

**(2)**   A continuance may be granted by the court only upon a showing of good cause in open court or during a telephone conference under s. 807.13 on the record and only for so long as is necessary, taking into account the request or consent of the representative of the public under s. 938.09 or the parties, the interests of the victims and the interest of the public in the prompt disposition of cases.

**(3)**   Failure to comply with any time limit specified in this chapter does not deprive the court of personal or subject matter jurisdiction or of competency to exercise that jurisdiction. Failure to object to a period of delay or a continuance waives the time limit that is the subject of the period of delay or continuance. If a party does not comply with a time limit specified in this chapter, the court may grant a continuance under sub. (2), dismiss the petition with or without prejudice, release the juvenile from secure or nonsecure custody or from the terms of a custody order or grant any other relief that the court considers appropriate.

tuted information indicating that a child should be referred to the court as delinquent, a question inapplicable to the case at hand. *See J.W.T.*, 159 Wis. 2d at 760.

¶ 18. Finally, even if *J.W.T.* were said to apply to this case, in *J.W.T.* we held that the forty-day time limit of WIS. STAT. § 48.24(5) is triggered only when the intake worker has that quantum of information available that would enable a reasonable intake officer to evaluate the appropriate disposition of the case. *See J.W.T.*, 159 Wis. 2d at 763. By Fournier's own admission, all information regarding the abuse of the girls was provided to her at the June 29, 1999 meeting; no additional information was provided after that date. The July 6, 1999 interviews with Andrea and Ashley yielded no new evidence of abuse. Thus, the quantum of information to enable Fournier to evaluate the appropriate disposition of the case was available to her on June 29, 1999.

¶ 19. The Department's own documents reveal that it understood that the June 29, 1999 contact constituted receipt of referral information. An intake worksheet is filled out by a fixed intake worker when a call is taken over the phone; the person describing the abuse first contacted the Department on June 29, 1999, and the intake worksheet was completed on June 29, 1999. A client identification sheet is created when the Department receives a referral, and in this case the client identification sheet is dated June 29, 1999. The intake inquiry recommendation indicates that the allegations of abuse were received on June 29, 1999. The initial assessment was assigned on June 29, 1999. The Child Abuse and Neglect Investigation Report reveals that the case was received on June 29, 1999. According to Fournier's own testimony, a referral is when the

Department receives "a referral regarding child abuse or neglect and [the case is] assigned to a social worker." The social worker, Fournier, was assigned to the case on June 29, 1999. Most significantly, the Sheboygan County Health and Human Services Initial Assessment and Safety Evaluation Worksheet and Conclusion specifically states "*06/29/99 Received Referral.*" We conclude that the receipt of referral information in this case occurred on June 29, 1999.

¶ 20. The Department argues that the quantum of evidence standard was not met here until Jodell refused to cooperate with Fournier on August 9, 1999. Following the logic of the Department's argument, before Jodell refused to cooperate, there was insufficient evidence of the girls' status, but after she refused to cooperate, there was sufficient evidence that the children were in need of protection or services. Thus, according to the Department's reasoning, Jodell's lack of cooperation was additional evidence of the children's CHIPS status. This is erroneous.

¶ 21. The circuit court, while acknowledging the differences between delinquency petitions and CHIPS petitions, also wrongly relied on this reasoning:

> For all those reasons, I think we have to look at the process of evaluating the facts of the case differently than we would in the juvenile matter, and I would expect that one of the considerations would be the cooperativeness of the family members, and that is apparently what Miss Fournier was trying to ascertain. Without any success, for whatever reason, and I think that's a legitimate effort on her part. In fact, I would have been surprised if she hadn't done it.
>
> Therefore, I am satisfied that once she concluded that the family members did not want to resolve this issue in an informal way, cooperate

with the Department, that she had no other choice at that point but to decide a CHIPs petition was necessary.

Consequently, I believe that under the rules and the statute, that that's when the 40 days started to tick, and in fact, the petition was then filed in a timely fashion.

In its reconsideration decision, the court stated:

So, I can't find that because she exercised her right not to go to the meeting that that necessarily precludes the Department from using that information in a sense against her, I guess, to the extent that it then causes the Department to believe . . . that there will not be the level of cooperation from the family needed to make sure the family takes care of the matter.

¶ 22.   Jodell was not required to cooperate with Fournier, *see* WIS. STAT. § 48.24(2)(b), and her refusal to cooperate cannot be used as additional evidence of the children's CHIPS status. The circuit court's and the Department's interpretations are not supported by the clear language of § 48.24(5). The forty-day time period of § 48.24(5) commences upon receipt of referral information. The Department did not receive referral information when Jodell refused to cooperate; the Department received referral information on June 29, 1999, when the allegation of potential child abuse was received by the intake worker, when an intake worker was assigned to the matter, and when April informed the intake worker of her stepfather's abuse.

¶ 23.   The Department's argument that its own classification of the received information as a referral does not constitute a referral pursuant to WIS. STAT. § 48.24(5) belies common sense. Intake workers pos-

sess numerous powers and duties, *see* WIS. STAT. § 48.067, have multiple obligations to perform during the intake process, *see* § 48.24, must personally inform both the child and the parents of their basic rights in a CHIPS petition, *see* WIS. STAT. § 48.243 and undergo extensive training prior to assuming their intake worker duties, *see* WIS. STAT. § 48.06. The Department is statutorily charged with providing child welfare intake and dispositional services and with the administration of those services for the purpose of protecting and preserving the health, safety and well-being of children. *See* WIS. STAT. §§ 48.01 and 48.06. Both the courts and the public must be able to trust that the Department understands the terms it utilizes in relation to its statutory obligations.

¶ 24. The Department further argues that WIS. STAT. § 48.981(3)(c)4 allows sixty days after receipt of a report of abuse or neglect to investigate this report and then WIS. STAT. § 48.24(5) allows the intake worker an additional forty days to refer the matter to the district attorney for a CHIPS petition. We disagree with this interpretation.

¶ 25. WISCONSIN STAT. § 48.981 is Wisconsin's mandatory child abuse reporting statute; the specific subdivision cited by the Department, § 48.981(3)(c)4, states in relevant part:

> The county department or, in a county having a population of 500,000 or more, the department or a licensed child welfare agency under contract with the department shall determine, within 60 days after receipt of a report, whether abuse or neglect has occurred or is likely to occur.

However, this subdivision cannot be read in isolation from the remainder of the statute. Section 48.981(3)(a) reads in relevant part:

*Referral of report.* A person required to report under sub. (2) shall immediately inform, by telephone or personally, the county department . . . of the facts and circumstances contributing to a suspicion of child abuse or neglect or of unborn child abuse or to a belief that abuse or neglect will occur. The sheriff or police department shall within 12 hours, exclusive of Saturdays, Sundays or legal holidays, refer to the county department . . . all cases reported to it. The county department . . . may require that a subsequent report be made in writing. Each county department . . . shall adopt a written policy specifying the kinds of reports it will routinely report to local law enforcement authorities.

Section 48.981(2), referenced in § 48.981(3)(a), identifies mandatory reporters:

A physician, coroner, medical examiner, nurse, dentist, chiropractor, optometrist, acupuncturist, other medical or mental health professional, social worker, marriage and family therapist, professional counselor, public assistance worker, including a financial and employment planner, . . . school teacher, administrator or counselor, mediator[,] . . . child care worker in a day care center or child caring institution, day care provider, alcohol or other drug abuse counselor, member of the treatment staff employed by or working under contract with a county department under s. 46.23, 51.42 or 51.437, physical therapist, occupational therapist, dietitian, speech-language pathologist, audiologist, emergency medical technician or police or law enforcement officer having reasonable cause to sus-

pect that a child seen in the course of professional duties has been abused or neglected or having reason to believe that a child seen in the course of professional duties has been threatened with abuse or neglect and that abuse or neglect of the child will occur shall, except as provided under sub. (2m), report as provided in sub. (3). Any other person, including an attorney[,] having reason to suspect that a child has been abused or neglected or reason to believe that a child has been threatened with abuse or neglect and that abuse or neglect of the child will occur may make such a report. Any person, including an attorney, having reason to suspect that an unborn child has been abused or reason to believe that an unborn child is at substantial risk of abuse may report as provided in sub. (3). No person making a report under this subsection may be discharged from employment for so doing.

The implication of § 48.981, read in its entirety, is that a report is a formal statement of suspected child abuse from a person mandated to convey his or her suspicions. Thus, the sixty-day deadline of § 48.981(3)(c)4, when read in conjunction with the other provisions of the statute, applies to reports filed by § 48.981(2)(a) mandatory reporters.

¶ 26. The definitions of "report" and "referral" support this interpretation. A "report" is a "formal oral or written presentation of facts," BLACK'S LAW DICTIONARY 1303 (7th ed. 1999), while a "referral" is defined as "[t]he act or an instance of sending or directing to another for information, service, consideration, or decision." *Id.* at 1285. The definition of "report" is more formal and official than "referral," thus implying a formal recitation of facts from a mandatory reporter.

¶ 27. The Department itself acknowledges the distinction between a "report" and a "referral." By the

Department's own admission, after a WIS. STAT. § 48.981 report is received, once the Department determines that abuse or neglect has occurred, the matter is then referred to an intake worker under WIS. STAT. § 48.24(5). Consequently, the provisions of § 48.981 are triggered by a mandatory reporter, while the provisions of § 48.24(5) are triggered by any referral to the Department. There was no § 48.981 report here, only a § 48.24(5) referral to the Department. Once the Department received this referral information on June 29, 1999, the § 48.24(5) forty-day deadline began to run.

## CONCLUSION

■

¶ 28.   The Department did not request that the CHIPS petitions be filed within forty days of its receipt of referral information as required by WIS. STAT. § 48.24(5). Thus, the petitions must be dismissed with prejudice. Accordingly, we reverse the order of the circuit court.

*By the Court.*—Order reversed.